# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SANDPIPER RESIDENTS ASSOCIATION, *et al.*,

    *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

    *Defendant*.

Civil Action No. 20-1783 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiffs in this case—the Sandpiper Residents Association and two individual residents—reside in Galveston, Texas in a privately-owned apartment complex ("Sandpiper Cove Apartments") subsidized through the Project Based Rental Assistance ("PBRA") program administered by Defendant the U.S. Department of Housing and Urban Development ("HUD"). Dkt. 1 at 4, 8 (Compl. ¶¶ 1–2, 11–12). According to Plaintiffs, Sandpiper Cove Apartments are not decent, safe, or sanitary, as required under the PBRA program, yet HUD has withheld relief necessary to assist Plaintiffs in relocating to different housing, violating its statutory and regulatory duty. Plaintiffs seek injunctive relief from the Court pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"); the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; and the Equal Protection component of the Fifth Amendment's Due Process Clause, U.S. Const. amend. V. Before the Court is HUD's motion to transfer the case to the Southern District of Texas. Dkt. 13. Plaintiffs oppose this motion, arguing that the District of Columbia is an appropriate venue. Dkt. 14.

For the reasons explained below, the Court will **DENY** HUD's motion to transfer.

## I. BACKGROUND

The Fair Housing Act authorizes HUD to enter into contracts with privately-owned residential complexes to provide low-cost housing to low-income families. 42 U.S.C. § 1437f. Owners of these complexes have an obligation to maintain their properties so that they are "decent, safe, and sanitary." 24 C.F.R. § 886.323. The complex in which Plaintiffs reside, Compass Pointe Apartments (also known as "Sandpiper Cove Apartments") holds such a contract with HUD. Dkt. 1 at 4 (Compl. ¶ 1). Notwithstanding that contract, Plaintiffs claim that the property's owner, Compass Pointe Apartments Texas LLC, *id.* at 21 (Compl. ¶ 66), has inadequately maintained Sandpiper Cove Apartments, leading to problems including, but not limited to: mold; water leaks; power surges that damage electronic devices; and, in the case of at least one apartment, an infestation of slugs. *Id.* at 31–32 (Compl. ¶¶ 99–100).

HUD too has deemed Sandpiper Cove Apartments inadequately maintained. In 2016, a contractor for HUD conducted a Management and Occupancy Review of the residential complex and determined that several aspects of the property's state of repair were "unsatisfactory." *Id.* at 13 (Compl. ¶¶ 28–30). A subsequent HUD Real Estate Assessment Center physical inspection conducted in May 2019 found that the condition of the property remained "unsatisfactory," issued Sandpiper Cove Apartments a failing grade, and identified a long list of health and safety deficiencies. *Id.* at 11–12 (Compl. ¶¶ 21–22). That same month, HUD's Fort Worth Regional Office, located in Fort Worth, Texas, sent the owner of Sandpiper Cove Apartments a notice of default. *Id.* at 15 (Compl. ¶ 37); Dkt. 13 at 2; Dkt. 13-2 at 1–3; Dkt. 16-1 at 2 (Gamez Decl. ¶ 5). The notice cautioned that if the owner failed to take corrective action within a 60-day period, "the assistance provided under" its contract with HUD could be "reduced, suspended, or abated, or the . . . [c]ontract [could] be terminated." Dkt. 13-2 at 3. The notice, however, also permitted

the owner to request an extension of time to take corrective action, so long as the owner provided a plan to ameliorate the deficiencies, a timeline for doing so, sources of funding, and other information. *Id.*

Plaintiffs, through counsel, sent a letter to Ben Carson, then-Secretary of HUD, on September 5, 2019, Dkt. 14-2; Dkt. 1 at 21 (Compl. ¶ 65), "requesting that HUD take administrative actions within its statutory authority to enforce fair housing standards and its own regulations . . . at Sandpiper Cove," Dkt. 14-2 at 1. Plaintiffs requested that HUD "[p]rovide all Sandpiper Cove residents with [h]ousing [c]hoice [v]ouchers needed to obtain . . . housing in neighborhoods without substandard conditions;" "[r]elocation assistance;" "[c]ounseling assistance to help residents find alternative housing in Galveston county or [elsewhere] should they choose to move;" and "an award of reasonable plaintiff attorney's fees." *Id.* at 2.

On or about December 2, 2019, HUD's Director of the Office of Asset Management and Portfolio Oversight—based in Washington, D.C.—confirmed receipt of Plaintiffs' letter and explained that the owner of Sandpiper Cove Apartments had, in the wake of the notice of default, promptly submitted to HUD a plan to improve the property either by selling "to a preservation-oriented owner who [would] rehabilitate the property" or by "pursuing refinancing for rehabilitation" of the property, either of which would be secured by the end of 2019. Dkt. 14-1 at 1–2; *see also* Dkt. 16 at 2 (acknowledging that this response letter issued from HUD's Washington, D.C. headquarters). After asserting that HUD has statutory discretion to determine what action to take in such situations, the Director concluded: "Because HUD continues to gather information regarding the owner's default, the condition of the property, and other relevant factors which will inform HUD's next steps, HUD has not committed to a final agency action." *Id.*

Plaintiffs brought this action on June 30, 2020. Dkt. 1. In Plaintiffs' view, "HUD's letter makes it clear that HUD is not providing the tenants with tenant protection vouchers and relocation assistance." *Id.* at 22 (Compl. ¶ 67). Plaintiffs further claim that the owner has taken no action "to address the imminent health and safety risks" at the property, and "tenants continue to . . . live in units that HUD admits are not decent, safe, or sanitary while HUD lets the owner pursue a sale." *Id.* In an effort to compel agency action, Plaintiffs bring claims under the APA, 5 U.S.C. § 706, arguing that in withholding the relief sought by Plaintiffs, HUD has violated its obligations under the 2019 Consolidated Appropriations Act, Pub. L. No. 116-6, 133 Stat. 13; the 2020 Consolidated Appropriations Act, Pub. L. No. 116-94, 133 Stat. 2534; the HUD Secretary's duties as set forth in 42 U.S.C. § 3608(e)(5); and HUD regulation 24 C.F.R. § 886.323(e). Dkt. 1 at 43–46 (Compl. ¶¶ 137–45). Citing the fact that "over 88% of the tenants at Sandpiper Cove are Black and Hispanic," *id.* at 33–34 (Compl. ¶ 103), Plaintiffs also accuse HUD of intentional discrimination, in violation of the Fair Housing Act, 42 U.S.C. § 3604(a), and the Equal Protection component of the Due Process Clause of the Fifth Amendment, Dkt. 1 at 46–48 (Compl. ¶¶ 146–51).

HUD moves pursuant to 28 U.S.C. § 1404(a) for a transfer of venue to the United States District Court for the Southern District of Texas, which encompasses Galveston, Dkt. 13; Dkt. 16, and Plaintiffs oppose that request, Dkt. 14.

## II. ANALYSIS

Federal law requires that plaintiffs bring suit "in the proper venue" to "ensure[] that a district with some interest in the dispute or nexus to the parties adjudicates the plaintiff's claims." *Hamilton v. JPMorgan Chase Bank*, 118 F. Supp. 3d 328, 333 (D.D.C. 2015). The question whether venue is proper "is generally governed by 28 U.S.C. § 1391." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Under 28 U.S.C. § 1391(e)(1), a civil action naming a United States agency as a defendant may "be brought in any judicial district in which (A) a defendant in the action resides[;] (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[;] or (C) the plaintiff resides if no real property is involved in the action." *See also Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 356 (D.D.C. 2014).

Pursuant to 28 U.S.C. § 1404(a), the Court may transfer a case to "any other district or division where it might have been brought" for the "convenience of [the] parties and witnesses, in the interest of justice." The inquiry is two-fold. First, the Court must determine whether the case could have been brought in the transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Second, the Court must weigh the private and public interests at stake. *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 127 (D.D.C. 2018). This requires the Court to consider the "preferred forum of the parties," the "location where the claim arose," and "factors of convenience," as well as "the transferee district's familiarity with the governing law," "the

relative congestion of the courts," and the "local interest in deciding local controversies at home." *Id.* at 128–30. The party moving for transfer bears the burden of persuasion. *Id.* at 127.

As an initial matter, all parties agree that venue is proper in the District of Columbia. Dkt. 13 at 2; Dkt. 14 at 5. But that does not end the matter because, according to HUD, the Southern District of Texas is a substantially more convenient venue. In support of this contention, HUD stresses that "Plaintiffs reside in the Southern District of Texas, the property at issue is located there, and," at least according to HUD, "the [c]omplaint challenges conduct by HUD occurring in that judicial district." Dkt. 13 at 4. HUD also contends that Plaintiffs are forum shopping to avoid unfavorable precedent in the Southern District of Texas. *Id.* at 9–10. Plaintiffs disagree, arguing that their complaint focuses not on the actions of the Fort Worth Regional Office or the condition of the premises in Galveston, Texas, but on the decision made by the Director of HUD's Office of Asset Management and Portfolio Oversight in Washington, D.C., denying the request that HUD provide Plaintiffs with tenant protection vouchers, relocation assistance, and release from their existing leases. Dkt. 14 at 15; *see also* Dkt. 1 at 48 (Compl. ¶ 152).

As explained below, the Court concludes that HUD has failed to carry its burden of demonstrating that the Southern District of Texas constitutes a more convenient forum than this one.

**A.     Private Interests**

"A plaintiff's choice of forum is generally afforded 'substantial deference,'" although "that deference is not unyielding." *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 311 (D.D.C. 2015) (quoting *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001)). Here, HUD argues that Plaintiffs' choice of forum deserves minimal weight

6

because Plaintiffs do not reside in the District of Columbia. Dkt. 13 at 5. HUD is correct that this Court and other courts have held that "deference to [a] plaintiff's choice of forum is lessened when the plaintiff's choice is not the plaintiff's home forum." *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 332 (D.D.C. 2020); *see also* 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3848 (4th ed. 2013). But it is equally true that "a motion to transfer under Section 1404(a) should not be granted lightly" because the cases at issue are, by definition, ones "in which the plaintiff's choice of venue is proper under the applicable venue provisions" and "setting the defendant's burden of persuasion too low will encourage transfer motions[] and the concomitant expenditure of litigant and judicial time and resources." Wright & Miller, *supra*, § 3848. Thus, even if Plaintiffs' choice of forum might receive *less* deference because they do not reside in the District of Columbia, their permissible choice of forum is still entitled to *some* deference, and the burden of persuasion remains with HUD. *See Wei Lai Dev. LLC v. USCIS*, No. 21-cv-887, 2021 WL 2073403, at *4 (D.D.C. May 24, 2021) (stating "that deference is lessened when the plaintiff's choice [of venue] is not the plaintiff's home forum," but distinguishing such cases from situations in which there are *no* meaningful ties to the plaintiff's choice of venue). To be sure, Plaintiffs' choice of forum might have been motivated, at least in part, by strategic considerations, but that possibility does not fundamentally alter this calculus, because it is just as plausible that HUD's motion to transfer is itself motivated, at least in part, by the Department's own strategic considerations.

HUD also argues that Plaintiffs' claims arose outside the District of Columbia and that, even though the actions or inactions of HUD officials in the District of Columbia are sufficient to satisfy 28 U.S.C. § 1391(e), the locus of the dispute lies in Fort Worth, Texas, where HUD's regional office "issued the notice of default to the property owner in May 2019," *id.* at 6, which

7

was a condition precedent to Plaintiffs' alleged right to relief. HUD further claims that it is this regional office that possesses the ability to grant the relief that Plaintiffs seek. Vouchers only issue, according to HUD, after (1) the regional office determines that terminating a contract is appropriate because an owner has failed to comply with a notice of default or determines that dwellings "pose an imminent health and safety risk to residents" and (2) staff at HUD headquarters in D.C. approve that regional determination. Dkt. 16 at 2–3; Dkt. 16-1 at 3 (Gamez Decl. ¶¶ 11–12). Thus, HUD explains, the letter that Plaintiffs received from the agency in December 2019, which referenced the need to gather further information, was referring to information-gathering occurring at the regional office level. Dkt. 16 at 1–2. Because that regional office "has not determined that termination of the . . . contract is appropriate for the Sandpiper Cove Apartments or that the units pose an imminent health and safety risk to . . . residents," HUD continues, the officials who work at its D.C. headquarters do not have the power to issue vouchers. *Id.* at 3.

This argument fails for two reasons. First, HUD's Fort Worth Regional Office is located in the Northern District of Texas and not in the proposed transferee district. Dkt. 14 at 12. Thus, if this case is transferred to the Southern District of Texas, the case will be litigated in a district in which no relevant HUD decision-maker resides and in which no relevant decision was or will be made. By contrast, all parties agree that HUD's headquarters are located in the District of Columbia, and HUD concedes that its headquarters will have final approval authority over any decision to issue tenant protection vouchers or to terminate the relevant housing assistance payments. Dkt. 16-1 at 3 (Gamez Decl. ¶ 12). Second, HUD takes issue with Plaintiffs' theory of the case, but Plaintiffs are entitled to frame their own claims as they deem appropriate. In HUD's view, Plaintiffs are actually challenging the actions or inactions of HUD's Fort Worth

8

Regional Office. But Plaintiffs disagree, arguing that flaws in the decision of HUD's Office of Asset Management and Portfolio Oversight constitute the gravamen of their complaint. *See* Dkt. 14 at 15. HUD, in turn, counters that the Office of Asset Management and Portfolio Oversight can act only after the Fort Worth Regional Office completes its process and, thus, any challenge directed at the Office of Asset Management is premature. That may (or may not) be right. But HUD's argument is directed at the merits of Plaintiffs' claim and has no bearing on venue.

HUD also claims that "[t]he ease of access to sources of proof also favors transfer since Plaintiffs' allegations stem from allegations of unfit and dangerous conditions at real property that is located in Texas." Dkt. 13 at 6. Moreover, HUD continues, "to the extent that any hearing is held, holding such a hearing in the Southern District of Texas would be more convenient because that is where Plaintiffs, Plaintiffs' counsel, and the government officials involved are located." *Id.* at 7. As to the convenience of Plaintiffs and their counsel, the Court defers to their preference to litigate in the District of Columbia, despite HUD's contention that it would be more convenient for Plaintiffs to sue in the proposed transferee district. As to the convenience of governmental officials, the Court is unpersuaded that substantial discovery will be required in the Southern District of Texas or that HUD witnesses will need to travel from the Southern District of Texas to this district for a factual hearing. And even if travel is required, the Court notes, once again, that HUD's regional office is not located in the Southern District of Texas but, rather, is located in the Northern District. To be sure, it is a longer trip from Fort Worth to the District of Columbia than to the Southern District of Texas, but, either way, travel might be necessary. Even more importantly, Plaintiffs challenge the actions (or inactions) of officials in the District of Columbia, and, even if HUD might someday prevail in its contention that such a challenge is premature, it is the challenge that Plaintiffs have brought. Finally, to the

9

extent Plaintiffs bring APA challenges, those challenges will almost certainly be resolved on the administrative record, and to the extent Plaintiffs bring constitutional claims, they maintain that the relevant records are located at HUD's headquarters in the District of Columbia. Dkt. 14 at 14. If at a later date Plaintiffs seek substantial discovery in Texas, the Court will hold them to the representations that they make now and to their choice of forum.

Without more, the Court is unpersuaded that proximity to the location of certain decisionmakers or the property in question is crucial for this case.

**B.    Public Interests**

HUD further argues that public interests weigh in favor of transfer. The Court is again unpersuaded. As HUD acknowledges, "there is no reason to suspect that any federal district court is unfamiliar with the relevant law[,] and the various [d]istricts each face congestion." Dkt. 13 at 9. And although there is generally an interest in deciding local controversies at home, *Bourdon v. DHS*, 235 F. Supp. 3d 298, 308 (D.D.C. 2017), Plaintiffs' challenge—at least as they plausibly frame it—does not raise what is merely a local dispute; rather, they challenge the actions (or inactions) of HUD decisionmakers in the District of Columbia. Finally, HUD argues that Plaintiffs are engaging in forum shopping. In support of that contention, HUD notes that "counsel for the Plaintiffs [have] recently litigated similar claims on behalf of other parties in the Southern District of Texas and, in each of those cases, the Court granted HUD's motion to dismiss." Dkt. 13 at 9; *see, e.g.*, *Hawkins v. HUD*, No. 18-cv-3052, 2020 WL 1469793 (S.D. Tex. Mar. 26, 2020), *appeal filed*, No. 20-20281 (5th Cir. May 29, 2020). But Plaintiffs are permitted to bring claims in any venue that is authorized by statute, and, as explained above, it is equally likely that HUD has its own strategic reasons for seeking a change in venue. The Court is disinclined to pick sides in that contest.

Accordingly, the Court will deny HUD's motion to transfer venue.

## CONCLUSION

For the reasons above, it is hereby **ORDERED** that HUD's motion for transfer, Dkt. 13, is **DENIED**; and it is further

**ORDERED** that HUD shall file a responsive pleading to the complaint on or before July 23, 2021.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: June 23, 2021