UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SANDPIPER RESIDENTS ASSOCIATION, *et al.*,

    *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

    *Defendant.*

Civil Action No. 20-1783 (RDM)

## MEMORANDUM OPINION AND ORDER

In a Memorandum Opinion and accompanying Order issued in May, the Court dismissed Plaintiffs' complaint in this case because the claims asserted were moot and therefore beyond the Court's jurisdiction. *Sandpiper Residents Ass'n v. U.S. Dep't of Hous. and Urb. Dev.*, No. 20-1783, 2022 WL 1604717, at *8, *15–16 (D.D.C. May 21, 2022); Dkt. 49. The Court also denied Plaintiffs' motion for a preliminary injunction. *Id.* Plaintiffs now move for reconsideration and ask the Court to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). Rule 59(e) sets a high bar for relief, which Plaintiffs have not met. The Court will, accordingly, **DENY** the motion.

### I. BACKGROUND

**A.**   **Factual Background**

The facts of this case are set forth in detail in the Court's prior Opinion, *see Sandpiper Residents Ass'n*, 2022 WL 1604717, at *4–6, but the short of it is as follows: Compass Pointe Apartments, also known as Sandpiper Cove, is a privately owned apartment complex in Galveston, Texas, that is subsidized by the U.S. Department of Housing and Urban Development

("HUD") through a contract with Sandpiper Cove's owner under HUD's Project Based Rental Assistance ("PBRA") program. Dkt. 25 at 4 (2d Am. Compl. ¶ 1). HUD's subsidy allows tenants to live in the complex at a reduced rate. *Sandpiper Residents Ass'n*, 2022 WL 1604717, at *2. Under the PBRA program, the tenants make payments based on their ability to pay, and the HUD funds make up the difference between that amount and a "contract rent" level agreed upon by the landlord and HUD. *Id.* One condition of this arrangement is that the property owner must maintain the subsidized units in good repair and in a decent, safe, and sanitary condition. *Id.* In May 2019, HUD determined that Sandpiper Cove's then-owner, Compass Pointe Apartments, LLC (the "Previous Owner"), had failed to abide by this condition and accordingly issued it a "Notice of Default." *Id.* at *4.

The issuance of this Notice of Default triggered HUD's authority to take a range of discretionary enforcement actions to address the situation. *Id.* at *2–3. HUD took several such actions: it required the Previous Owner to replace its management company at Sandpiper Cove, reviewed and approved the Previous Owner's plan to address the many problems at the complex, and encouraged the Previous Owner to sell Sandpiper Cove to a new, rehabilitation-focused owner. *Id.* at *4–5. This last suggestion came to fruition, and in October 2021 the Previous Owner sold Sandpiper Cove to Galveston 3916 Winne Street GP, LLC (the "New Owner"). *Id.* at *5.

**B.     The Instant Case**

Over a year prior to the sale to the New Owner, Plaintiffs—two tenants and the tenant association of Sandpiper Cove—commenced this action. Dkt. 1 (Compl.). The gravamen of Plaintiffs' complaint was that HUD had violated the law in various ways by failing to issue Tenant Protection Vouchers to Sandpiper Cove's tenants. *See Sandpiper Residents Ass'n*, 2022 WL 1604717, at *8, *14. Tenant Protection Vouchers are a particular form of tenant-based

2

rental assistance that HUD may provide to tenants in certain circumstances. *Id.* at *3. As relevant here, the statute that authorizes and appropriates funds for these vouchers says that HUD "may provide [Tenant Protection Vouchers] . . . for units assisted under a project-based subsidy contract funded under the 'Project-Based Rental Assistance' heading under this title where the owner has received a Notice of Default and the units pose an imminent health and safety risk to residents[.]" Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. L, tit. II, 134 Stat. 1182, 1869 (2020) (the "Act").[1] According to Plaintiffs, in light of the previously issued Notice of Default and the still deplorable conditions at Sandpiper Cove, HUD's decision not to offer such vouchers to Sandpiper Cove's tenants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, the Fair Housing Act, 42 U.S.C. § 3604(a), and the equal protection guarantee of the Fifth Amendment, U.S. Const. amend. V. Plaintiffs moved for a preliminary injunction ordering HUD to issue the vouchers, Dkt. 26, and Defendants simultaneously opposed that motion and moved to dismiss on various grounds, including mootness, Dkt. 36.

The Court concluded that the sale of Sandpiper Cove to the New Owner had rendered all of Plaintiffs' claims moot and therefore deprived the Court of jurisdiction to adjudicate them. *Sandpiper Residents Ass'n*, 2022 WL 1604717, at *8. Every claim was at bottom a challenge to HUD's decision to withhold Tenant Protection Vouchers, *id.* at *8, *15, and the relevant statutory language conditions the issuance of such vouchers on whether "*the* owner" of a property "has received a Notice of Default," 134 Stat. at 1869 (emphasis added). After the

---

[1] Substantially the same language has appeared in prior years' appropriations, with the only difference being the amount appropriated. *See* Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, div. G, tit. II, ¶ 2, 133 Stat. 13, 435–36; Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, div. L, tit. II, "Public and Indian Housing," "Tenant-Based Rental Assistance," ¶ 2, 133 Stat. 2534, 2976 (2019).

3

Previous Owner sold Sandpiper Cove, *the* owner became the New Owner, and the New Owner, unlike the Previous Owner, had never received a Notice of Default. *Sandpiper Residents Ass'n*, 2022 WL 1604717, at *8–9. Because the preconditions for the issuance of Tenant Protection Vouchers were not present, the Court could not provide Plaintiffs any relief. *Id.* at *12. It accordingly dismissed the complaint and denied the motion for a preliminary injunction.

**C.      Plaintiffs' Motion to Alter or Amend the Judgment**

Plaintiffs now ask the Court to reconsider its decision and to alter or amend the judgment. Dkt. 50. In the main, they argue that the Court failed adequately to consider one of the arguments they raised previously and that, notwithstanding the Court's Opinion, this argument proves that they are entitled to relief. *Id.* at 1–6. They also raise several other issues in response to various arguments HUD made in its briefing and points the Court touched on in its Opinion. *Id.* at 7–8. HUD opposes the motion. Dkt. 52.

## II. ANALYSIS

Rule 59(e) permits a party to file "[a] motion to alter or amend the judgment" within "[twenty-eight] days after the entry of the judgment." Fed. R. Civ. P. 59(e). A motion under Rule 59(e) "is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). Such motions are "generally disfavored," *Dage v. Johnson*, 537 F. Supp. 2d 43, 48 (D.D.C. 2008), absent "extraordinary circumstances" *id.* (quoting *Niedermeier v. Off. of Max S. Baucus*, 153 F. Supp. 2d 124, 128 (D.D.C. 2006)). A Rule 59(e) motion "is not a vehicle to present a new legal theory that was available prior to judgment," *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012), nor is it an opportunity simply "to reargue facts and theories upon which a

court has already ruled," *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995) (per curiam).

Plaintiffs fail to identify any basis for relief under Rule 59(e).  They do not suggest that there has been a change in controlling law, that new evidence has emerged, or that extraordinary circumstances risk a manifest injustice.  *See* Dkt. 50 at 1–8.  By their own account, their motion "is narrowly focused on a clear error of law."  Dkt. 53 at 1.  But Plaintiffs do not identify any error the Court made.  Instead, they rehash arguments that were already presented and soundly rejected.  Rule 59(e) requires more.

Even setting aside the fact that Plaintiffs make no arguments suited to a Rule 59(e) motion, the arguments they do make lack merit under any standard.  Plaintiffs first point out that, even if their claims are moot today, they were not moot for a period of approximately two years between the issuance of the Notice of Default and the sale of Sandpiper Cove to the New Owner.  *See* Dkt. 50 at 2–6.  Congress, moreover, appropriated funding for Tenant Protection Vouchers during this interval.  *Id.* at 2–5.  As a consequence, say Plaintiffs, this funding should still be available to Sandpiper Cove tenants, even if funds appropriated after the October 2021 sale of Sandpiper Cove to the New Owner are not.  *Id.*

As the Court explained in its prior Opinion, this argument fails.  Whatever may have been true in the past, Plaintiffs request an action by HUD in the present.  And HUD can issue Tenant Protection Vouchers in the present "if and only if (1) at the time the Secretary acts, 'the owner' 'has' (present tense), (2) 'received a Notice of Default' (past tense)."  *Sandpiper Residents Ass'n*, 2022 WL 1604717, at *9 (emphasis omitted) (quoting 134 Stat. at 1869).  "The problem Plaintiffs face" is thus the same one they faced before:

> The Act provides that HUD may issue Tenant Protection Vouchers only "where *the* owner has received a Notice of Default," 134 Stat. at 1869

5

>(emphasis added).  The statute, notably, does not say "*an* owner," nor does it permit the issuance of vouchers "where a Notice of Default has been issued with respect to the *property*."  Rather, HUD may issue Tenant Protection Vouchers only if, at the time of the issuance of such vouchers, a Notice of Default has been received by *the* owner of the property.  Because the owner of Sandpiper Cove is the New Owner, and the New Owner has not received a Notice of Default, this condition is no longer satisfied.

*Id.*  So even if Plaintiffs are correct that previously appropriated funds remain available for use—something the Court expresses no view about—that fact is irrelevant.  HUD cannot issue Tenant Protection Vouchers to Plaintiffs today because the statutory prerequisites for that action are not satisfied today.  Put differently, HUD cannot allocate funds to Plaintiffs based on authority it may have possessed in the past but possesses no longer, even if such funds are (or are not) in some sense available to HUD in the abstract.

Second, Plaintiffs insist that HUD's decision whether to issue Tenant Protection Vouchers is not a decision "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2) and, accordingly, is subject to judicial review.  Dkt. 50 at 7–8.  This assertion appears to respond to a line of argument that HUD made in its motion to dismiss and in its opposition to Plaintiffs' motion for a preliminary injunction.  *See* Dkt. 36 at 31–39.  But this argument has no bearing on the basis on which the Court actually decided this case—mootness—and accordingly provides no basis for reconsideration.  Because the Court concluded in its prior opinion that it lacked jurisdiction over Plaintiffs' claims, it had no occasion to reach the parties' arguments regarding § 701(a)(2).  Nothing has changed in this regard.  Plaintiffs' claims are still moot, so the Court still has no reason to and does not decide whether the HUD decisions at issue are reviewable under the APA.  Plaintiffs' argument brings them no closer to the relief they seek.

Finally, Plaintiffs contend in their reply brief that they have standing to bring their challenge.  Dkt. 53 at 6–7.  The Court is skeptical, as it was in its prior Opinion.  *See Sandpiper*

6

*Residents Ass'n*, 2022 WL 1604717, at *13.  But, as before, it need not decide whether Plaintiffs have standing to bring their claims, because those claims are moot.  *Id.*  Once more, Plaintiffs do not point the Court to any clear legal error that would require the Court to alter or amend its judgment.

## CONCLUSION

In sum, Plaintiffs give the Court no reason to reconsider its prior decision, so it is hereby **ORDERED** that Plaintiffs' motion to alter or amend the judgment, Dkt. 50, is **DENIED**.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  November 4, 2022